ATTORNEY GENERAL *vs.* FITCHBURG RAILROAD COMPANY.

Suffolk.    March 22. — May 11, 1886.    W. ALLEN & HOLMES, JJ.,
                                absent.

Under the St. of 1881, *c.* 230, the manager of the Troy and Greenfield Railroad and
    Hoosac Tunnel has no power, for the purpose of saving expense to the Com-
    monwealth, to make an order which violates a contract entered into, under the
    St. of 1880, *c.* 261, between said manager and a certain railroad corporation, by
    the terms of which the corporation is entitled to charge the Commonwealth for
    the number of miles run by the switching engines of the corporation upon the
    first-named railroad.

COMPLAINT, under the St. of 1881, *c.* 230, § 4,* in behalf of
the manager of the Troy and Greenfield Railroad and Hoosac
Tunnel, for an injunction to restrain the defendant from vio-
lating the following order, made by said manager, and dated
June 30, 1885: "On and after July 1, cars for stations east of
East Deerfield are not to be switched into station order at North
Adams."

The case was heard by *Devens,* J., and reserved for the con-
sideration of the full court; such decree to be entered as law
and justice might require.    The facts appear in the opinion.

---

    * Section 1 of this act provides that "the manager of the Troy and
Greenfield Railroad and Hoosac Tunnel is authorized to make and enforce
all needful rules for the operation thereof, including the operation of the yard
at North Adams, and also including rules as to the circumstances which
shall constitute delivery of freight and freight cars from one railroad com-
pany to another at said yard.    And he shall have the power to operate said
yard, including the shifting of cars therein, and to hire men and locomotive
power therefor, and in case of necessity he may use the locomotive power of
any operating railroad company therefor."

    Section 2 provides that, "if any of the companies operating said road
shall object to any of said rules, the question shall be decided at once by the
board of railroad commissioners."

    Section 4 provides that, "if either of said operating companies shall refuse
or neglect to comply with any rule made by the manager, he may in addition
to his other remedies apply to the Attorney General, who may in his behalf
make complaint before any justice of the Supreme Judicial Court, in term
time or vacation, and said justice shall have power in a summary manner to
hear the complaint and to enforce his decision thereon by injunction or by
any other fit decree.    And the decision of said justice, pending appeal or
exceptions, shall remain in full force."

*H. N. Shepard*, Assistant Attorney General, for the plaintiff.

*G. A. Torrey*, for the defendant.

DEVENS, J.    The St. of 1881, *c.* 230, § 1, in empowering the manager of the Troy and Greenfield Railroad and Hoosac Tunnel to make and enforce all needful rules " for the operation thereof, including the operation of the yard at North Adams," may well be interpreted as investing him with the power to make them consistently with the contracts already in existence as to the management and operation of said road or yard, so far as the parties entitled to the benefit of such contracts are concerned.    There are expressions in it which might perhaps suggest a different construction; and, as the defendant contends that the regulation or order passed by the manager, which has been approved by the railroad commissioners, is one which seeks to impair the obligation of a contract already in existence between it and the Commonwealth, we proceed to consider whether such is its effect.

The Commonwealth occupies a double relation to the Troy and Greenfield Railroad and Hoosac Tunnel.    It is the owner of property which it may deal with as private persons may in regard to their property, making contracts, and being held to all the lawful obligations concerning such property, even if such obligations cannot always be enforced against it by suit or legal process.    The Commonwealth is also the sovereign.    Under the Constitution of the United States, it cannot, as such, annul, alter, or impair the obligation of a contract, which, as the owner of property, it has lawfully made.    But it has not, by making any contract as to its property, parted with its power of making all proper laws for the government of its citizens and for their welfare and safety.    Even if by these the operations of contracts may be incidentally affected, and new and more onerous duties imposed on contracting parties, such laws are not necessarily unconstitutional.    *New Orleans Gas Co.* v. *Louisiana Light Co.* 115 U. S. 650.

By virtue of the St. of 1880, *c.* 261, a contract was entered into on August 14, 1880, between the then manager of the railroad, who was legally authorized so to contract under direction of the Governor and Council, and the Fitchburg Railroad Company, under and by virtue of which the defendant has ever since

been, and is now, operating, with other corporations, the portion of the road of the Troy and Greenfield Railroad and Hoosac Tunnel which is between the stations at North Adams and Greenfield. Of this road the yard at North Adams is a part. The same statute provided "that no such contract shall be made which shall preclude the use of said railroad and tunnel by other railroad corporations whose roads connect therewith," and other corporations in fact use said yard and operate portions of said Troy and Greenfield Railroad under similar contracts. The third section of the same statute authorized the contracts to be made "with connecting railroads for the purpose of constituting through lines."

That the contract made with the defendant as to the use, management, &c. of the road of the Troy and Greenfield Railroad and Hoosac Tunnel was intended, under the authority of the statute, to make of the railroads thus connected a through line from North Adams to Boston, is established by an examination of its various details. If this is so, it was contemplated that the operation and use of the Troy and Greenfield Railroad and Hoosac Tunnel would rightfully be that which would be proper and appropriate for it as a part of the through line.

The receipts from gross earnings, according to the contract, are to be divided *pro rata*, in proportion to the miles which freight or passengers are carried on each road. Thus, if a passenger is transported the whole way from North Adams to Boston $\frac{87}{143}$ is to be received by the Troy and Greenfield Railroad and Hoosac Tunnel and $\frac{106}{143}$ by the Fitchburg Railroad. It is the proportion that the number of miles which the freight or passenger is transported on the Troy and Greenfield Railroad east of North Adams bears to the whole number of miles travelled on the two roads, which governs this division of the gross earnings. The second clause of the contract which makes this provision also provides for certain deductions from gross earnings before any division. The third clause imposes upon the defendant the duty of furnishing all motive power and cars, all supplies incidental thereto, and all servants and employees. The fourth clause allows to the defendant as compensation all the actual expenses of operating the road owned by the State, including therein all the expenses properly chargeable to such operation; it enumerates a

large number of charges which are, in the first instance, to be borne by the defendant, but which are to be afterwards divided in different proportions, some of which are arbitrarily fixed, and others regulated by various circumstances. The most important of these expenditures are to be divided in proportion to the total miles run on each road. The number of miles, therefore, run upon the Troy and Greenfield Railroad, so far as these items are concerned, is very important, as it increases the amount which the defendant is entitled to charge against the Commonwealth by reason of this use of the Troy and Greenfield Railroad. The engine, in switching freight cars, arranges them in the trains at North Adams in what is called station order; that is, the cars to be left at each station are placed together in the train, and in the order in which the stations are to be reached upon the journey. Cars arrive at North Adams for the defendant by various roads, and, if properly sorted and arranged there, expense, danger, and delay of switching are avoided at the intermediate stations. The report finds that, "considering the road from North Adams to Boston as a single road, it is the most economical and advantageous way of running the same for the defendant to switch all cars coming east into station order at North Adams, and it is, and was when said contract was made, the usual, customary, and most economical method of railroads to switch all cars into station order at the place where such cars are received."

The defendant has heretofore contended that it should be allowed for the number of miles run by this switching engine as an expenditure by it upon the road owned by the State, and the claim was allowed by the railroad commissioners in the last settlement between the parties for the operation of the road.

On April 30, 1885, the manager of the road — in view of the fact that the commissioners had allowed the defendant for the number of miles run at North Adams for switching cars into order for stations east of Greenfield, which is the terminus of the Troy and Greenfield Railroad — inquired of the defendant whether it would consent to bear this expense; and again, on May 16, informed the defendant that he should be compelled to order the work of switching cars stopped at North Adams unless the State was relieved of the expense. On June 30, the

manager ordered, by a letter directed to the defendant, that thereafter "cars for stations east of East Deerfield are not to be switched into station order at North Adams." This order having been approved by the railroad commissioners, and the defendant neglecting to comply with it, the Attorney General, under the St. of 1881, c. 230, § 4, makes complaint to this court, in order that the defendant may be compelled to comply with and obey it.

It is urged, that, as the contract does not give the defendant the exclusive right to operate the Troy and Greenfield Railroad, but only a right in common with other companies, these two connecting lines cannot be treated as a through line or a single road; nor can it be said that the Troy and Greenfield Railroad is, in the ordinary sense, operated by the defendant. But while the use by the defendant of the Troy and Greenfield Railroad must be modified so far as the rights and privileges which other companies have therein are concerned, such modification does not make the connecting roads any the less a through line, or any the less one which should be dealt with, so far as the relations of the two roads are concerned, as if it were a single and united line. The switching which is done at the end of the Fitchburg line at the Boston station for the purpose of properly arranging the cars into station order adds similarly to the number of miles run, so far as the defendant is concerned, and it is obliged to bear this expense. If that which is done at North Adams so far as stations beyond East Deerfield are concerned is for the benefit of the Fitchburg road, similarly that which is done at Boston so far as stations beyond the same point are concerned is for the benefit of the Troy and Greenfield Railroad. The defendant has the right to do the switching at North Adams as a necessary implication from the contract made with the Commonwealth, it being found that it is the most economical way, considering it as a through line, whether the number of miles run by such switching can be reckoned under the contract in estimating the whole number of miles run as a basis of the charges to be paid by the Commonwealth, or not. It is no answer to the objection that the order alters the contract, to say that, even if the number of miles run will be diminished by compliance with it, the obligation will remain the same to pay for so many miles as actually are run. The

defendant has the right to run, for switching purposes, that number of miles consistent with proper and economical management, both on its own road and on the Troy and Greenfield road, and to diminish this right is to deprive it of the right for which it had contracted.

The contention of the manager is, that the authority given by the St. of 1881, *c.* 230, "is necessary, because, since other companies use said yard and operate said railroad under contracts similar to that with the defendant, the power to regulate the conflicting claims of these companies must be lodged somewhere, and the depositary is the manager, an officer of the Commonwealth, independent of and impartial to all of said companies."

If the statute be construed as intending to provide only for the safety and convenience of the various parties using this road and yard, and to govern its use with a view to those public considerations by which all must be controlled in their management of their own property, and if it can be seen that this regulation was passed with that object, even if incidentally it affords a pecuniary benefit to the Commonwealth, by diminishing the number of miles run on the Troy and Greenfield road, it might still be maintained as a proper exercise of the police power of the State. Every holder of property, however absolute and unqualified his title may be, holds it under the implied liability that his use shall not be injurious to the equal enjoyment of others having an equal right to the enjoyment of their property, nor injurious to the rights of the community; and it may be requisite to prescribe regulations having for their object good order and safety to persons and property in the management of the yard and road, as to which there are different contracts, and in which there are varied interests. *Commonwealth* v. *Alger*, 7 Cush. 53. One entitled to the benefit of a contract, which itself is property, would be no more entitled to complain that his rights under it were thus limited, than would the owner of an estate because he was forbidden to make such use of it as would, in the opinion of the Legislature, be dangerous to public health and safety.

If the object of the statute, therefore, was solely to authorize the making of proper regulations for the use and management of the road and yard, in view of the fact that various parties had different and perhaps conflicting interests and rights, for the

purpose of providing for the public safety, and if the regulation passed by the manager had this for its object, it might well be contended to be a proper exercise of the police power of the State, which the defendant must have contemplated might be exerted when it made its contract. If the statute authorized more than this, it could not be upheld. While the legislative power over matters affecting the public interests still continues, notwithstanding any contract that may lawfully have been made as to the property of the State, " by becoming a party to a contract with its citizens, the government divests itself of its sovereignty with respect to the terms and conditions of the compact, and its construction and interpretation, and stands in the same position as a private individual." *Commonwealth* v. *New Bedford Bridge*, 2 Gray, 339, 350. Whatever construction be given the statute, it is clear that the regulation was not passed because of any requirement, real or supposed, of public necessity or safety, and in order to control the careful administration of the road and yard in this respect. Its purpose was to compel the corporation to abandon to a certain extent the use of the yard, unless it would abandon the claim it made, that, by this use with its switching engine, it established a demand to be adjusted in its account with the Commonwealth. There is no evidence or suggestion that this use interfered with good order or safety, or the rightful use to which others were entitled. That such was the purpose of the order, and that it had no other, is established by the correspondence which preceded it, and by the finding of the report, " that the object of the manager, in giving said order, was to save expense to the Commonwealth, and to increase the revenue derived by the Commonwealth from said contract."

Upon the whole case, we are of opinion that the manager was not authorized, either by virtue of the statute in question or otherwise, to issue the order forbidding the switching in the yard at North Adams unless the defendant should comply with his demand that it should make no claim on account thereof. However creditable the desire is to save expense to the Commonwealth, this result cannot be reached by annulling, directly or indirectly, any provisions of a contract into which it has entered, nor can any authority be given to do this.

*Complaint dismissed.*